UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BIRMINGHAM FIRE INSURANCE COMPANY
OF PENNSYLVANIA, INSURANCE COMPANY
OF THE STATE OF PENNSYLVANIA, and
AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

      Plaintiffs,

v.                                                                   Case No. 8:07-CV-762-T-24-MSS

COMCAR INDUSTRIES, INC. and MARTIN GAS
CORPORATION n/k/a MARTIN RESOURCE
MANAGEMENT CORPORATION.

      Defendants.

_____/

**ORDER**

This cause comes before the Court on two motions: (1) Martin Gas' Motion to Strike Comcar and CTL's Affirmative Defenses (Doc. No. 97), which Comcar and CTL oppose (Doc. No. 105); and (2) Plaintiffs' Motion to Strike Comcar and CTL's Affirmative Defenses (Doc. No. 94), which Comcar and CTL oppose (Doc. No. 103).

**I.  Standard of Review**

Federal Rule of Civil Procedure 12(f) provides that the Court can order that "any redundant, immaterial, impertinent, or scandalous matter" be stricken from a pleading. However, "[a] motion to strike will 'usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" Scelta v. Delicatessen

Support Services, Inc., 57 F. Supp.2d 1327, 1347 (M.D. Fla. 1999)(quoting Seibel v. Society Lease, Inc., 969 F. Supp. 713, 715 (M.D. Fla. 1997)).  However, an affirmative defense will be stricken if it is insufficient as a matter of law.  See Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002).

## II.  Background

Kevin Waggoner, an employee of Comcar Industries, Inc. ("Comcar"), filed suit against Martin Gas Corporation for Martin Gas' alleged negligence in connection with an incident that occurred on August 16, 2003 while he was working for Comcar at Martin Gas' terminal facility ("the Waggoner lawsuit").  At that time, Martin Gas had in effect two insurance policies: a General Liability Policy issued by Ace American Insurance Company (the "ACE GL Policy"), which provided $1,000,000 in liability coverage; and an Umbrella Policy issued by American International Specialty Lines Insurance Company (the "AISLIC Umbrella Policy"), which provided $25,000,000 in liability coverage in excess over all primary policies.  The ACE GL Policy is scheduled underlying insurance on the AISLIC Umbrella Policy.

Comcar has a Commercial Auto Policy with Birmingham Fire Insurance Company of Pennsylvania (the "Birmingham Auto Policy") that has a $2,000,000 deductible.  Comcar also has a Commercial General Liability Policy with Insurance Company of the State of Pennsylvania (the "Pennsylvania CGL Policy") that has a $1,000,000 deductible.

Martin Gas contends that it and Comcar/CTL Distribution, Inc. ("CTL") entered into a Terminal Access Agreement (the "TAA"), granting Comcar/CTL access into Martin Gas's terminal in Tampa.[1]  The TAA that Martin Gas refers to (attached to the second amended

---

[1] CTL is a subsidiary of Comcar.

complaint) provides that Comcar/CTL will indemnify Martin Gas for any liability arising from Comcar's/CTL's negligent acts. (Doc. No. 64, Ex. E). Additionally, the TAA requires Comcar/CTL to name Martin Gas as an additional insured on its insurance policies. (Doc. No. 64, Ex. E).

The Waggoner lawsuit has been settled for the total sum of $2,725,000. Martin Gas' position in that lawsuit was that it was an additional insured under both of Comcar's insurance policies pursuant to the TAA. Comcar and CTL believe that they are not liable for Waggoner's claim. As such, Comcar and CTL refused to settle Waggoner's claim. Martin Gas agreed to advance the sum of $1,000,000 (the limit of the ACE GL Policy), and AISLIC agreed to advance the sum of $1,725,000 to settle the Waggoner action. AISLIC advanced this sum under protest and reservation of rights to seek reimbursement from Comcar and CTL.

Plaintiffs Birmingham Fire Insurance Company of Pennsylvania ("Birmingham"), Insurance Company of the State of Pennsylvania ("Pennsylvania"), and AISLIC filed a second amended complaint (Doc. No. 64) against Comcar, CTL, and Martin Gas, in which Plaintiffs seek declarations regarding the various insurance policies and AISLIC seeks damages against Comcar. In response, Martin Gas filed a cross-claim against Comcar and CTL seeking declarations regarding the various insurance policies and damages. (Doc. No. 67). Thereafter, Comcar and CTL asserted several affirmative defenses in response to Plaintiffs' second amended complaint and Martin Gas' cross-claim. (Doc. No. 69, 78, 79, 80).

**III.  Martin Gas' Motion to Strike**

Martin Gas moves to strike several of Comcar and CTL's affirmative defenses. Accordingly, the Court will analyze each of the affirmative defenses at issue.

### A. Third Affirmative Defense

In their third affirmative defense, Comcar and CTL state that they have no contractual obligation to indemnify or provide insurance coverage to Martin Gas for Martin Gas' own negligence. Therefore, Comcar and CTL continue, the additional insured endorsement to the Birmingham and Pennsylvania policies were never invoked, and there is no coverage for Martin Gas' own negligence under the policies. Martin Gas does not dispute that the TAA attached to the second amended complaint does not impose an obligation on Comcar or CTL to indemnify Martin Gas for its own negligence. However, Martin Gas argues that under the TAA, Comcar and CTL did have an obligation to name Martin Gas as an additional insured, thus providing coverage for Martin Gas' own negligence under the Birmingham and Pennsylvania policies.

Since there is a dispute as to whether the TAA attached to the second amend complaint is valid, the Court finds that it is improper to strike this affirmative defense. Therefore, whether Martin Gas is an additional insured under the policies and whether there is coverage for Martin Gas' own negligence cannot be determined at this time. As such, the motion is denied as to the third affirmative defense.

### B. Fifth Affirmative Defense

In their fifth affirmative defense, Comcar and CTL state that even if the TAA attached to the second amended complaint is valid, there is no insurance coverage for Martin Gas under the Birmingham or Pennsylvania policies because the TAA does not obligate Comcar or CTL to indemnify Martin Gas' for its own negligent conduct. Again, Martin Gas concedes that the TAA does not impose an obligation on Comcar or CTL to indemnify Martin Gas for its own negligence. However, Martin Gas argues that the TAA obligates Comcar and CTL to name

Martin Gas as an additional insured on their policies and that obligation is independent of the indemnity obligation in the TAA. The Court agrees.

The TAA attached to the second amended complaint, which is construed according to Texas law, contained the following relevant provisions. Paragraph 2 provides: Comcar/CTL agrees to indemnify Martin Gas "from any and all claims . . . in any way arising out of . . . the presence or activities . . . of [Comcar/CTL] . . . on or adjacent to the Terminal, [redacted] if arising from the negligent acts or omissions of [Comcar/CTL]." (Doc. No. 64, Ex. E, p. 2). Additionally, Paragraph 3 provides:

> That, in addition to any other insurance [Comcar/CTL] may purchase to provide coverage to cover its liability under Section 2 above, but not by way of limitation, prior to commencement of operations under this AGREEMENT, [Comcar/CTL] will provide [Martin Gas] with certificates of insurance with underwriters acceptable to [Martin Gas] evidencing actual placement of coverage as follows:
> a. Commercial General Liability Insurance with a minimum combined single limit of $2,000,000 per occurrence for bodily injury and property damage and a $2,000,000 aggregate.
> b. Automobile Liability Insurance, covering all owned, non-owned and hired vehicles with a minimum combined single limit for bodily injury and property damage of $2,000,000 per accident. Such insurance must include contractual liability coverage.
> \* \* \*
> All insurance coverages required above and all certificates evidencing such coverages shall be endorsed to specifically reflect that [Martin Gas is an] . . . "additional assured[]", that the coverages are primary and not excess of or contributory with any other insurance available to [Martin Gas], that all deductibles and/or self insured retentions shall be for the account of [Comcar/CTL] . . .. Further, the limits of insurance specified above shall be independent of and shall not limit or restrict in any respect the protection, defense, indemnity and hold harmless obligations of [Comcar/CTL] set forth in Section 2 above.

(Doc. No. 64, Ex. E, p. 3, 5).

The language of the TAA makes it clear that the insurance required in paragraph 3 "is in addition to any other insurance [Comcar/CTL] may purchase to provide coverage to cover its

5

liability under Section 2." Therefore, the insurance requirement under paragraph 3 is independent of the indemnity requirement of paragraph 2, and as such, the insurance coverage is not limited by the scope of paragraph 2. See Evanstan Ins. Co. v. ATOFINA Petrochemicals, Inc., 2008 WL 2405005 (Tx. June 13, 2008); Getty Oil Co. v. Ins. Co. of N.A., 845 S.W.2d 794 (Tx. 1993). This conclusion is supported by the fact that the TAA requires Comcar/CTL not only to obtain such additional insurance, but also to name Martin Gas as an additional insured under each policy. Further, paragraph 3 states that "the limits of insurance specified [in paragraph 3] shall be independent of . . . indemnity . . . obligations of [Comcar/CTL] set forth in Section 2 above." Accordingly, this affirmative defense is legally insufficient and will be stricken.

### C. Sixth and Seventh Affirmative Defenses

In their sixth and seventh affirmative defenses, Comcar and CTL state that if the TAA attached to the second amended complaint obligates Comcar or CTL to indemnify Martin Gas for its own negligence, the indemnity provision is invalid under Texas Law. As stated above, Martin Gas acknowledges that the TAA does not obligate Comcar or CTL to indemnify Martin Gas for its own negligence. As such, these affirmative defenses are irrelevant and will be stricken.

### D. Eighth Affirmative Defense

In their eighth affirmative defense, Comcar and CTL state that if the TAA attached to the second amended complaint is valid, then the scope of paragraph 3 of the TAA should be limited by the scope of the of the indemnity obligation set forth in paragraph 2. As such, Comcar and CTL continue, the Birmingham and Pennsylvania policies do not provide insurance coverage for

Martin Gas' own negligence because there is no obligation on Comcar or CTL to indemnify Martin Gas under such circumstances in paragraph 2 of the TAA.

As stated above in the analysis of Comcar and CTL's fifth affirmative defense, the insurance requirement under paragraph 3 of the TAA is independent of the indemnity requirement of paragraph 2, and as such, the insurance coverage is not limited by the scope of paragraph 2. Accordingly, this affirmative defense is insufficient and will be stricken.

### E.  Ninth Affirmative Defense

In their ninth affirmative defense, Comcar and CTL state that if the TAA attached to the second amended complaint is valid and the scope of the additional insured provision in paragraph 3 of the TAA is independent of the indemnity obligation in paragraph 2 of the TAA, then Martin Gas still would not have coverage under the Birmingham and Pennsylvania policies because Comcar and CTL's large deductible under those policies would render such a result unfair and would be contrary to public policy. Comcar and CTL have not cited any authority in support of this defense, and as such, it will be stricken.

### F.  Eleventh Affirmative Defense

In their eleventh affirmative defense, Comcar and CTL state that even if Martin Gas is an additional insured under the Pennsylvania policy, the auto exclusion provision of that policy precludes coverage because the incident involved a tanker truck owned by CTL. The auto exclusion provides: "This insurance does not apply to . . . 'Bodily injury' or 'property damage' arising out of the ownership . . . [or] use . . . of any . . . 'auto' . . . owned or operated by . . . any insured." (Doc. No. 64, Ex. B).

Martin Gas responds that the auto exclusion does not apply due to the "Separation of

7

Insureds" provision.  The "Separation of Insureds" provision states: "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies . . . [s]eparately to each insured against whom claim is made or 'suit' is brought."  (Doc. No. 64, Ex. B).  As such, Martin Gas argues that because the Pennsylvania policy has a severability clause that requires that each insured be viewed separately, the auto exclusion will only apply against the insured that owned the tanker truck–CTL.

The case law[2] supports Martin Gas' position.  As explained by one court:

> [T]he combination of a severability clause and an exclusion referring to "any insured," creates an ambiguity regarding coverage. The problem lies in the fact that the severability clause informs an insured that his entitlement to coverage will be determined solely on the basis of acts attributed to him, whereas the exclusion states that coverage will be denied for all insureds if any one insured is alleged to have engaged in excluded conduct. In short, protection afforded by one provision is negated by another. Because this ambiguity results from conflicting clauses inserted into the policy by the insurance company, case law dictates that the ambiguity should be resolved against the drafter and in favor of coverage. Courts have applied this maxim when confronted with a severability clause and an exclusion referring to "any insured," by giving full meaning and operative effect, to the extent possible, to both provisions. Thus, courts view each insured independently, and apply the exclusion to deny coverage only when the specific insured-as opposed to *any insured* -is alleged to have engaged in the excluded conduct.

Medical Staffing Network, Inc. v. New Hampshire Ins. Co., 2001 WL 1147447, at *2 (S.D. Fla. June 15, 2001)(internal citation omitted).  Thus, the auto exclusion will not apply to preclude coverage to Martin Gas based on CTL's ownership of the tanker truck.  See id.; see also Premier

---

[2] While the TAA attached to the second amended complaint is construed pursuant to Texas law (because the parties agreed to such in the TAA), the Birmingham and Pennsylvania insurance policies were issued to Comcar in Florida, and thus, Florida law applies when interpreting those policies.  See State Farm Mutual Auto Ins. Co. v. Roach, 945 So. 2d 1160, 1163-64 (Fla. 2006).

Ins. Co. v. Adams, 632 So. 2d 1054 (Fla. 5th DCA 1994).  Accordingly, this affirmative defense is not legally sufficient and will be stricken.

### G.  Twelfth Affirmative Defense

In their twelfth affirmative defense, Comcar and CTL state that the TAA attached to the second amended complaint is not valid because of a lack of consideration.  Martin Gas argues that this defense is legally insufficient because the TAA specifically recites the consideration given by Martin Gas–"granting the privilege [to Comcar/CTL] of gaining access to [Martin Gas'] Terminal."  (Doc. No. 64, Ex. E).  In response, Comcar and CTL argue that they had routine access to the terminal prior to the alleged TAA, and as a result, Martin Gas gave them nothing in exchange for the obligations imposed on them in the TAA.

Upon consideration, the Court finds that there are factual issues that may affect the viability of this affirmative defense.  As such, the Court denies the motion to strike this defense.

### H.  Thirteenth Affirmative Defense

In their thirteenth affirmative defense, Comcar and CTL state that Martin Gas and its insurers failed to mitigate their damages when they settled the Waggoner lawsuit.  Martin Gas argues that such a bare-bones, conclusory statement is not sufficient to withstand a motion to strike.  Comcar and CTL respond that they may be able to prove that the settlement amount was too high or that Martin Gas failed to adopt a prudent litigation strategy that would have reduced the settlement amount.

There is case law on both sides of the issue of how much detail is necessary when asserting a mitigation defense.  In this case, this Court falls on the side of the cases that find that such an affirmative defense will withstand a motion to strike, since the defense is relevant to the

case and will not cause prejudice. Accordingly, the Court denies Martin Gas' motion to strike this defense.

### I.  Fourteenth Affirmative Defense

In their fourteenth affirmative defense, Comcar and CTL state that the anti-subrogation rule prohibits Martin Gas' insurer, AISLIC, from pursuing its contractual subrogation and equitable subrogation claims against them because they are insureds under the AISLIC Umbrella Policy. Martin Gas argues that this defense is irrelevant to Martin Gas' claims against Comcar and CTL, as the defense would apply, if at all, to AISLIC. Comcar and CTL respond that the anti-subrogation rule would apply to Martin Gas to the extent that Martin Gas has asserted any claims properly belonging to AISLIC. Upon consideration, the Court finds that since Martin Gas has not addressed whether the anti-subrogation rule would apply to it to the extent that it has asserted any claims properly belonging to AISLIC, and since this defense will not cause any prejudice, it should be allowed to remain.

### J.  Fifteenth Affirmative Defense

In their fifteenth affirmative defense, Comcar and CTL state that Martin Gas did not effectively "vouch in"[3] Comcar and CTL to the Waggoner lawsuit because Martin Gas did not have standing to assert any claims against them in connection with that suit, and even if it did, Martin Gas failed to comply with Florida Rule of Civil Procedure 1.180 for impleading them into the suit. Martin Gas argues that this defense should be stricken because its claim against

---

[3] "Common law vouching is a process whereby a civil defendant notifies a nonparty that a suit is pending against the defendant and that if liability is found, the defendant will look to the vouchee for indemnity and hold him to the findings in that suit." Hilton Oil Transport v. Oil Transport Co., S.A., 659 So. 2d 1141, 1150 n.6 (Fla. 3d DCA 1995)(citation omitted).

Comcar and CTL is based on equitable and contractual principles, not "vouch in" principles.

Comcar and CTL respond that this defense goes directly to Martin Gas' allegations in its cross-claim (Doc. No. 67, p. 13) that Comcar and CTL are bound by the Waggoner settlement and cannot object to its reasonableness. Additionally, Comcar and CTL cite to a letter that Martin Gas sent them claiming that Comcar was "vouched in" to the Waggoner lawsuit. (Doc. No. 30, Ex. G).

Upon consideration, the Court finds that this defense does not cause prejudice and appears to be related to this case. As such, the Court denies the motion to strike this defense.

## IV.  Plaintiffs' Motion to Strike

Plaintiffs' motion to strike, and Comcar and CTL's response in opposition, largely mirrors Martin Gas' motion and the response thereto. As such, the Court's rulings on the viability of Comcar and CTL's third, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, thirteenth, and fifteenth affirmative defenses apply equally to Plaintiffs' motion to strike. However, the arguments regarding their fourteenth affirmative defense differs somewhat, so the Court will address that defense separately.

In their fourteenth affirmative defense, Comcar and CTL state that the anti-subrogation rule prohibits AISLIC from pursuing its contractual subrogation and equitable subrogation claims against them because they are insureds under the AISLIC Umbrella Policy. AISLIC argues that this defense must be stricken, because Comcar and CTL are not insureds under that policy.

AISLIC's policy defines an additional insured as a person to whom Martin Gas is obligated by a written Insured Contract to provide insurance with respect to liability arising out

of operations conducted by Martin Gas or on its behalf.  (Doc. No. 64, Ex. C, p.9).  The policy defines an Insured Contract as an agreement entered into by Martin Gas pertaining to Martin Gas' business under which Martin Gas assumes the tort liability of another party.  (Doc. No. 64, Ex. C).

The Court has already found that Comcar had sufficiently *alleged* that if there is a valid TAA, it required Martin Gas to indemnify Comcar and to name Comcar as an additional insured on all of its insurance policies.  (Doc. No. 96).  This finding was based on Comcar's allegations in its counterclaim and crossclaim.  (Doc. No. 78, ¶ 22, 23, 30, 40, 41, 47).  Further, this conclusion was based on the Court's perception that Comcar was alleging that a TAA may have existed other than the one attached to the second amended complaint.  (Doc. No. 96).  However, the Court noted that whether a TAA existed that required Martin Gas to indemnify Comcar and to name Comcar as an additional insured was an issue that is more appropriate for a motion for summary judgment or trial, and thus, could not be decided based solely on the pleadings.  Furthermore, the Court warned Comcar that to the extent that it was contending that the TAA attached to the second amended complaint may be valid, and that such TAA required Martin Gas to indemnify Comcar and to name Comcar as an additional insured under AISLIC's policy, such contention will fail.  (Doc. No. 96).  Based on this Court's prior findings, the Court will allow this affirmative defense to remain, as it cannot be determined at this time whether Comcar and/or CTL are insureds under the AISLIC policy.

**V.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Martin Gas' Motion to Strike Comcar and CTL's Affirmative Defenses (Doc. No.

97) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that the Court strikes Comcar and CTL's fifth, sixth, seventh, eighth, ninth, and eleventh affirmative defenses; otherwise, the motion is denied.

(2)   Plaintiffs' Motion to Strike Comcar and CTL's Affirmative Defenses (Doc. No. 94) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that the Court strikes Comcar and CTL's fifth, sixth, seventh, eighth, ninth, and eleventh affirmative defenses; otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 15th day of August, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record