UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BIRMINGHAM FIRE INSURANCE COMPANY
OF PENNSYLVANIA, INSURANCE COMPANY
OF THE STATE OF PENNSYLVANIA, and
AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

      Plaintiffs,

v.                                        Case No. 8:07-CV-762-T-24-MSS

COMCAR INDUSTRIES, INC., et al.,

      Defendants.

_____/

## ORDER

This cause comes before the Court on two motions: (1) Comcar Industries, Inc.

("Comcar") and CTL Distribution, Inc.'s ("CTL") Motion for Reconsideration.  (Doc. No. 137),

which Plaintiffs and Martin Gas Corporation ("Martin Gas") oppose (Doc. No. 140, 142); (2)

Comcar and CTL's Motion for Summary Judgment (Doc. No. 133), which Plaintiffs and Martin

Gas oppose (Doc. No. 139, 141).  Accordingly, the Court will address each motion.

## I.  Background

Kevin Waggoner, an employee of Comcar/CTL, filed suit against Martin Gas for Martin

Gas' alleged negligence in connection with an incident that occurred while he was working for

Comcar/CTL at Martin Gas' terminal facility in August of 2003 ("the Waggoner lawsuit").[1]

_____

[1]CTL is a subsidiary of Comcar.

Specifically, Waggoner was in a truck owned by CTL when he entered Martin Gas' terminal, and he contends that he was injured due to Martin Gas' failure to adequately maintain its equipment, which resulted in him coming into contact with molten sulfur.

At that time, Martin Gas had in effect two insurance policies: a General Liability Policy issued by Ace American Insurance Company (the "ACE policy"), which provided $1,000,000 in liability coverage; and an Umbrella Policy issued by American International Specialty Lines Insurance Company (the "AISLIC policy"), which provided $25,000,000 in liability coverage in excess over all primary policies.  Comcar/CTL had a Commercial Auto Policy with Birmingham Fire Insurance Company of Pennsylvania (the "Birmingham policy") that provided $1,000,000 of coverage after payment of a $2,000,000 self-insured retention ("SIR").  Comcar/CTL also had a $4,000,000 Commercial General Liability Policy with Insurance Company of the State of Pennsylvania (the "Pennsylvania policy") that has a $1,000,000 SIR.

Martin Gas contends that it and Comcar/CTL entered into a Terminal Access Agreement ("TAA"), granting Comcar/CTL access into Martin Gas' terminal in Tampa.  The TAA that Martin Gas refers to (attached to the second amended complaint) provides that Comcar/CTL will indemnify Martin Gas for any liability arising from Comcar's/CTL's negligent acts.  (Doc. No. 64, Ex. E).  Additionally, the TAA requires Comcar/CTL to name Martin Gas as an additional insured on its insurance policies.  (Doc. No. 64, Ex. E).

The Waggoner lawsuit has been settled for the total sum of $2,725,000.  Martin Gas' position in that lawsuit was that it was an additional insured under both of Comcar's insurance policies pursuant to the TAA.  Comcar and CTL believe that they are not liable for Waggoner's claim, and as such, they refused to settle Waggoner's claim.  Martin Gas agreed to advance the

sum of $1,000,000 (the limit of the ACE policy), and AISLIC agreed to advance the sum of

$1,725,000 to settle the Waggoner action.  AISLIC advanced this sum under protest and

reservation of rights to seek reimbursement from Comcar and CTL.

Plaintiffs Birmingham Fire Insurance Company of Pennsylvania ("Birmingham"),

Insurance Company of the State of Pennsylvania ("Pennsylvania"), and AISLIC filed a second

amended complaint (Doc. No. 64) against Comcar, CTL, and Martin Gas, in which Plaintiffs

seek declarations regarding the various insurance policies and AISLIC seeks damages against

Comcar.  In response, Martin Gas filed a cross-claim against Comcar and CTL seeking

declarations regarding the various insurance policies and damages.  (Doc. No. 67).  Thereafter,

Comcar and CTL asserted several affirmative defenses in response to Plaintiffs' second amended

complaint and Martin Gas' cross-claim.  (Doc. No. 69, 78, 79, 80).

## II.  Motion for Reconsideration

Comcar and CTL seek reconsideration of this Court's Order on motions to strike certain

of their affirmative defenses.  (Doc. No. 118).  As explained below, the motion is denied.

### A.  Standard of Review

There are three major grounds justifying reconsideration: (1) an intervening change in

controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to

prevent manifest injustice.  See Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694

(M.D. Fla. 1994)(citations omitted).  Reconsideration of a prior order is an extraordinary remedy

to be employed sparingly.  See id. (citations omitted).  Comcar argues that its motion is based on

the need to correct clear error.

3

**B.  Reconsideration is Not Warranted**

Comcar and CTL (hereinafter, collectively referred to as "Comcar") seek reconsideration of the Court's ruling granting the motions to strike their Fifth, Eighth, and Ninth affirmative defenses.  However, because Comcar has failed to show that there is a need to correct clear error, the motion is denied.

**1.  Fifth Affirmative Defense**

In its fifth affirmative defense, Comcar states that even if the TAA attached to the second amended complaint is valid, there is no insurance coverage for Martin Gas under the Birmingham or Pennsylvania policies, because the TAA does not obligate Comcar to indemnify Martin Gas' for its own negligent conduct.  In its motion to strike, Martin Gas argued that the TAA obligates Comcar and CTL to name Martin Gas as an additional insured on their policies and that obligation is independent of the indemnity obligation in the TAA.  The Court agreed with Martin Gas and granted the motion to strike this defense.

The TAA attached to the second amended complaint, which is construed according to Texas law, contains the following relevant provisions.  Paragraph 2 provides: Comcar/CTL agrees to indemnify Martin Gas "from any and all claims . . . in any way arising out of . . . the presence or activities . . . of [Comcar/CTL] . . . on or adjacent to the Terminal, [redacted] if arising from the negligent acts or omissions of [Comcar/CTL]."  (Doc. No. 64, Ex. E, p. 2). Additionally, paragraph 3 provides:

> That, in addition to any other insurance [Comcar/CTL] may purchase to provide coverage to cover its liability under Section 2 above, but not by way of limitation, . . . [Comcar/CTL] will provide [Martin Gas] with certificates of insurance . . . evidencing actual placement of coverage as follows:
> a.      Commercial General Liability Insurance . . . with a minimum . . . limit of $2,000,000 . . . .

> b.      Automobile Liability Insurance . . . with a minimum . . . limit . . . of
> $2,000,000 . . . .
>
> * * *
>
> All insurance coverages required above and all certificates evidencing such
> coverages shall be endorsed to specifically reflect that [Martin Gas is an] . . .
> "additional assured[]", that the coverages are primary and not excess of or
> contributory with any other insurance available to [Martin Gas], that all
> deductibles and/or self insured retentions shall be for the account of
> [Comcar/CTL] . . .. Further, the limits of insurance specified above shall be
> independent of and shall not limit or restrict in any respect the protection,
> defense, indemnity and hold harmless obligations of [Comcar/CTL] set forth in
> Section 2 above.

(Doc. No. 64, Ex. E, p. 3, 5).

In its prior order, the Court found that the language of the TAA makes it clear that the insurance required in paragraph 3 "is in addition to any other insurance [Comcar/CTL] may purchase to provide coverage to cover its liability under Section 2." Therefore, the Court concluded that the insurance requirement under paragraph 3 is independent of the indemnity obligation of paragraph 2, and as such, the insurance required by paragraph 3 was not limited by the scope of paragraph 2. See Evanstan Ins. Co. v. ATOFINA Petrochemicals, Inc., 2008 WL 2405005 (Tx. June 13, 2008); Getty Oil Co. v. Ins. Co. of N.A., 845 S.W.2d 794 (Tx. 1993).

The Court stated that this conclusion is supported by the fact that the TAA requires Comcar/CTL not only to obtain such additional insurance, but also to name Martin Gas as an additional insured under each policy. Further, the Court pointed out that paragraph 3 states that "the limits of insurance specified [in paragraph 3] shall be independent of . . . indemnity . . . obligations of [Comcar/CTL] set forth in Section 2 above." Accordingly, the Court found this affirmative defense to be legally insufficient.

In its motion for reconsideration, Comcar argues that this Court erred, because the scope of coverage available to Martin Gas must be determined with reference to the underlying

insurance policies.  Specifically, Comcar argues that the Birmingham policy and Pennsylvania

policy both provide that Martin Gas is an insured to the extent that Comcar/CTL is obligated to

include Martin Gas as an additional insured pursuant to the TAA, but that the insurance provided

to Martin Gas will not exceed the coverage required by the TAA.  Therefore, Comcar argues,

Martin Gas is entitled to insurance coverage under these policies that is no greater than the

coverage required by the TAA.

The Court agrees that the insurance provided to Martin Gas cannot exceed the coverage

required by the TAA.  The flaw in Comcar's argument, however, is its interpretation of the

coverage required by the TAA.  As explained above, in paragraph 3 of the TAA, Comcar is

required to obtain certain amounts of insurance coverage *in addition to* any insurance that

Comcar chose to obtain in order to cover its indemnity obligation set forth in paragraph 2.  Thus,

the requirement that Comcar obtain certain coverage pursuant to paragraph 3 of the TAA and to

name Martin Gas as an additional insured is independent of the obligation imposed on Comcar in

paragraph 2 to indemnify Martin Gas for any claims arising from Comcar/CTL's negligent acts

or omissions.  Therefore, the insurance coverage required by the TAA is not limited by the scope

of Comcar/CTL's indemnity obligation that is set forth in paragraph 2.  Rather, the scope of the

coverage required is set forth under paragraph 3, which requires a minimum of $2,000,000 of

commercial general liability insurance and a minimum of $2,000,000 of automobile liability

insurance.

Comcar attempts to strengthen its argument by citing National Union Fire Insurance Co.

v. Liberty Mutual, 2008 WL 544732 (S.D. Fla. Feb. 26, 2008), but its reliance on this case is

misplaced.  In National Union, Article X, Section 1 of the lease agreement between General

Cinema (lessee) and Mission Bay (lessor) required General Cinema to indemnify Mission Bay for any and all claims where the damage resulted from an act or omission on the part of General Cinema.  See id. at *3.  Article X, Section 2 of the lease required General Cinema to maintain insurance and name Mission Bay as an additional insured regarding all liability arising out of claims that fell within the indemnification provision of Article X, Section 1.  See id. at *4.  The court found that "the lease only imposed on General Cinema the obligation to provide insurance coverage to the extent of the obligation to indemnify Mission Bay from General Cinema's negligence."  Id.

The court reviewed General Cinema's insurance policy and its definition of who is an insured.  See id.  The definition of an insured under the policy included any entity that General Cinema agreed in writing to provide insurance for, but it limited coverage to the amount of coverage required by the written agreement, which was the lease.  See id. at *2.  The court concluded that since the policy referred "to the lease and limit[ed] coverage to that required by the lease, the policy clearly [did] not provide coverage to Mission Bay for its own negligence."  Id. at *5.  The National Union case is distinguishable from the instant case, because the coverage required by the TAA is not limited to coverage for Comcar/CTL's indemnity obligation; rather, the coverage obligation is set forth in paragraph 3.

Comcar also argues that the Court's finding that the insurance coverage required by the TAA is not limited to Comcar/CTL's indemnity obligation would result in an inequitable windfall to Martin Gas.  To support this argument, Comcar quotes a sentence from National Union, in which the court states: "Essentially, [such a result] would result in the insurer for the non-negligent party having to bear the cost of paying a judgment for the liability of the negligent

party." Id. at *6.  However, Comcar fails to quote the sentence that followed, in which the court stated: "General Cinema did not contract to provide such coverage."  Id. Unlike the lease agreement in National Union, paragraph 3 of the TAA in the instant case shows that Comcar did contract to provide such coverage.  Accordingly, Comcar's motion to reconsider the Court's ruling on this affirmative defense is denied.

## 2.  Eighth Affirmative Defense

Comcar's eighth affirmative defense is basically the same as its fifth affirmative defense.[2] In the order granting the motion to strike, this Court explained that for the reasons set forth in the analysis of Comcar's fifth affirmative defense, the motion to strike Comcar's eighth affirmative defense was granted.  This Court's analysis of Comcar's fifth affirmative defense remains, and as such, Comcar's motion for reconsideration regarding its eighth affirmative defense is denied for the same reasons.

## 3.  Ninth Affirmative Defense

In its ninth affirmative defense, Comcar states that if the TAA attached to the second amended complaint is valid and the scope of the additional insured provision in paragraph 3 of the TAA is independent of the indemnity obligation in paragraph 2 of the TAA, then Martin Gas still would not have coverage under the Birmingham and Pennsylvania policies because Comcar and CTL's large SIRs under those policies would render such a result unfair and would be

---

[2]In its eighth affirmative defense, Comcar states that if the TAA attached to the second amended complaint is valid, then the scope of paragraph 3 of the TAA should be limited by the scope of the of the indemnity obligation set forth in paragraph 2.  As such, Comcar continued, the Birmingham and Pennsylvania policies do not provide insurance coverage for Martin Gas' own negligence because there is no obligation on Comcar to indemnify Martin Gas under such circumstances in paragraph 2 of the TAA.

contrary to public policy.  The Court granted the motion to strike this defense, because Comcar

did not cite any authority in support of this defense.

In its motion for reconsideration, Comcar argues that due to its $2,000,000 SIR under the

Birmingham policy and $1,000,000 SIR under the Pennsylvania policy, Comcar/CTL would be

responsible for paying such amounts itself, and thus, in essence, Comcar/CTL would be

indemnifying Martin Gas for Martin Gas' own negligence (an obligation that is not imposed by

the TAA).  Despite Comcar's comparison of its payment of the SIRs to an indemnification

obligation, Comcar fails to cite any authority specifically concluding that insurance shifting

provisions that result in the non-negligent party paying a large SIR is against public policy.

Further, Martin Gas points out that Comcar/CTL's payment of the SIR is due to the fact that

Comcar/CTL chose to save premiums by purchasing insurance with a SIR.  Additionally, this

Court notes that the court in Getty Oil acknowledged that allowable insurance shifting provisions

(in which the negligent party's conduct is covered under the non-negligent party's insurance

policy) can result in a negligent party escaping liability, even though such a result is prohibited

under certain indemnification provisions (in which a non-negligent party is *required to indemnify*

the negligent party).  See Getty Oil, 845 S.W.2d at 805.  Accordingly, Comcar's motion to

reconsider this affirmative defense is denied.

## III.  Motion for Summary Judgment

In their motion for summary judgment, Comcar and CTL (collectively referred to as

"Comcar") essentially make the same arguments that they made in the motion for

reconsideration.  However, Comcar raises an additional argument in this motion–that under

Texas rules for contract construction, the TAA must be construed against Martin Gas and against

an extension of coverage for the Waggoner claim.  As explained below, the Court rejects this

argument.

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must draw all

inferences from the evidence in the light most favorable to the non-movant and resolve all

reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir.

2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the

non-moving party must then go beyond the pleadings, and by its own affidavits, or by

depositions, answers to interrogatories, and admissions on file, designate specific facts showing

there is a genuine issue for trial.  See id. (citation omitted).

### B.  The TAA Is Not Ambiguous

Comcar argues that the TAA must be construed against Martin Gas and against an

extension of coverage for the Waggoner claim, because Martin Gas drafted the TAA.  The Court

rejects this argument, because the contract must be ambiguous before the Court must construe it

against the drafter, and as explained below, the Court finds that the TAA is not ambiguous.  See

Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 860 (Tx. 2000); Lewis v. Vitol,

S.A., 2006 WL 1767138, at *4 (Tex. App. June 29, 2006)(citation omitted).

In determining whether the TAA is ambiguous, the Court looks to Texas law, which

provides:

> The question of whether a contract is ambiguous is one of law for the court.  In
> the interpretation of contracts the primary concern of courts is to ascertain and to
> give effect to the intentions of the parties as expressed in the instrument.  To
> achieve this object the Court will examine and consider the entire instrument so
> that none of the provisions will be rendered meaningless.  If a written instrument
> is so worded that a court may properly give it a certain or definite legal meaning
> or interpretation, it is not ambiguous. On the other hand, a contract is ambiguous
> only when the application of the applicable rules of interpretation to the
> instrument leave it genuinely uncertain which one of the two meanings is the
> proper meaning.  If after applying the established rules of interpretation, a written
> instrument remains reasonably susceptible to more than one meaning, extraneous
> evidence is admissible to determine the true meaning of the instrument.

R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518-19 (Tx. 1980)(internal

citations omitted).  Applying these rules of construction, the Court finds that the TAA is not

ambiguous.

Comcar argues that the TAA is ambiguous because in paragraph 2, it agrees to indemnify

Martin Gas only for acts or omissions arising out of its own negligence, not that of Martin Gas.

However, paragraph 3 states that all SIRs will be paid for by Comcar.  Therefore, Comcar

argues, the TAA is ambiguous, because under Martin Gas' reading, Comcar would be

responsible for the SIRs under its policies, which, in essence, means that Comcar is paying a

claim that is due to Martin Gas' negligence.  Since Comcar's interpretation of the TAA (that it is

in no way liable for any amounts attributable to Martin Gas' negligence) conflicts with Martin

Gas' interpretation, Comcar argues that the TAA is ambiguous.  The Court disagrees.

Paragraph 2 imposes an obligation on Comcar to indemnify Martin Gas in certain

situations (when Comcar's negligence results in a claim against Martin Gas).  Paragraph 3

imposes an obligation on Comcar to pay all SIRs on the required commercial general liability

policy and automobile insurance policy it obtains (however, the TAA does not require that

11

Comcar obtain insurance policies that have a SIR).  Thus, paragraphs 2 and 3 set forth two situations in which Comcar will be responsible for payment: (1) when a claim is made against Martin Gas due to Comcar's negligence, Comcar must indemnify Martin Gas; and (2) when a covered claim is made under the commercial general liability policy or automobile policy, regardless of whether the claim is due to Comcar's negligence, Comcar is responsible for paying the SIR of the policy.

The TAA is not ambiguous simply because Comcar and Martin Gas interpret it differently.  See Medical Towers v. St. Luke's Episcopal Hospital, 750 S.W.2d 820, 822 (Tex. App. 1988).  Instead, the Court determines the intent of the parties from the four corners of the TAA, not from the parties' proffered interpretations.  See ASI Technologies, Inc. v. Johnson Equipment Co., 75 S.W.3d 545, 548 (Tex. App. 2002).  After reviewing the TAA as a whole, it is clear that the TAA is not ambiguous and the only reasonable interpretation is that if the Waggoner claim is a covered claim under Comcar's policies, then Comcar is responsible for the SIRs of those policies, as specifically set forth in paragraph 3.

That Comcar contends that the result is unfair is of no consequence, as the Court cannot rewrite the TAA for the parties.  Rather, the parties are considered the masters of their own contract–free to use any language that they feel best expresses their intent and generally free to agree on any terms that they choose to, regardless of whether the terms would seem fair to a third party.  See Cross Timber Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex. App. 2000). Furthermore, the Court notes that the TAA did not require Comcar to obtain an insurance policy with a SIR–Comcar *chose* to do so.  The fact that Comcar is unhappy with the consequences of that choice cannot be remedied by this Court rewriting the TAA.

Comcar argues that Martin Gas' interpretation renders paragraph 2 meaningless. The Court disagrees, because paragraphs 2 and 3 impose two different, independent obligations on Comcar. The two paragraphs, when read together, set forth two situations in which Martin Gas will not be responsible for paying claims made against it: (1) if the claim is due to Comcar's negligence; and (2) if the claim is covered under Comcar's commercial general liability policy or automobile insurance policy due to Martin Gas' status as an additional insured. Therefore, if a claim is asserted against Martin Gas due to its own negligence and is not covered under the language of Comcar's insurance policies, then Martin Gas will be responsible for paying the claim pursuant to paragraph 2.

Furthermore, if the Court were to accept Comcar's interpretation that it is not responsible for the SIRs under its policies, it would not only render a portion of paragraph 3 meaningless, but also it would require the Court to rewrite paragraph 3 to either delete the part that makes Comcar liable for all SIRs or insert a condition that Comcar is not liable for the SIR if the claim is due to Martin Gas' negligence. The Court will not do so. See 6500 Cedar Springs, L.P. v. Collector Antique, Inc., 2000 WL 1176586, at *2 (Tex. App. 2000)(stating that the court "will not rewrite contracts to insert provisions parties could have included or imply restraints for which they did not bargain"). Also, Comcar's interpretation deprives Martin Gas of the benefit that it bargained for–additional insured status under Comcar's policies.

The Court notes that Comcar argues that the Court may consider the surrounding circumstances when interpreting the TAA. See Medical Towers, 750 S.W.2d at 823. However, the Court looks at the circumstances merely as background to assist in the understanding of the object and purpose of the language used in the TAA. See Zapata Corp. v. McIntyre, 2001 WL

13

253646, at *3 (Tex. App. 2001). "This does not mean . . . that the parties may prove the making

of an agreement different from that expressed in the written contract, nor that the unambiguous

language used in the contract may be violated or the legal effect thereof changed.'" <u>Fox v. Al</u>

<u>Gallo</u>, 428 S.W.2d 127, 131 (Tex. App. 1968)(quoting <u>Murphy v. Dilworth</u>, 151 S.W.2d 1004,

1005 (Tx. 1941)). Thus, "[w]hen the terms of a contract are plain and unambiguous, extrinsic

evidence is not admissible to show the parties' intent at the time of the making of the contract."

<u>Aland v. Faison Associates</u>, 1999 WL 500228, at *5 (N.D. Tx. 1999).

      In making its argument that the Court should consider the surrounding circumstances

when interpreting the TAA, Comcar points to the negotiation of the wording of paragraph 2 of

the TAA and the statements of Martin Gas' vice president, Don Neumeyer, regarding the

purpose of the TAA[3] to support its argument that it should not be liable in any way for the

Waggoner claim. Specifically, Comcar points to Neumeyer's deposition testimony, in which he

states that the purpose of the TAA was to protect Martin Gas from claims that result from a third

party's negligence while on Martin Gas' property, because such a claim had been made against

Martin Gas in the past. (Doc. No. 133: Neumeyer depo). Neumeyer also states that a purpose

was for "everybody to be responsible for their own actions." (Doc. No. 133: Neumeyer depo, p.

19).

      Comcar's reliance on Neumeyer's testimony is misplaced for two reasons. First, "[t]he

parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to

the terms of an unambiguous written agreement absent fraud, accident or mistake. . . . Only

where a contract is first determined to be ambiguous may the courts consider the parties'

_____

     [3]Neumeyer had authority to negotiate and execute the TAA (Doc. No. 133, Murley depo).

interpretation, and admit evidence to determine the true meaning of the instrument." <u>Hunton v. Guardian Life Ins. Co. of Am.</u>, 243 F. Supp.2d 686, 708 (S.D. Tx. 2002).  The Court has found the TAA to be unambiguous, so to the extent that Comcar is citing this testimony to contradict the plain language in paragraph 3 that Comcar would be responsible for all SIRs, such an attempt must fail.

Second, Comcar fails to acknowledge the rest of Neumeyer's testimony, in which he states that another purpose of the TAA was to verify that the entities on Martin Gas' property were properly insured and that the insurance provisions were essential to the TAA.  (Doc. No. 128: Neumeyer depo, p. 26-27).  Additionally, Neumeyer stated that he did not agree that the insurance provision in paragraph 3 had a relationship to the indemnity provision in paragraph 2.  (Doc. No. 128: Neumeyer depo, p. 78-79).  Under the plain language of the TAA, the insurance provisions set forth in paragraph 3 make Martin Gas an additional insured under Comcar's commercial general liability policy and automobile policy, and Comcar cannot use a portion of Neumeyer's testimony to vary the terms of paragraph 3 to either delete the part that makes Comcar liable for all SIRs or insert a condition that Comcar is not liable for the SIR if the claim is due to Martin Gas' negligence.

Comcar also points out the change in the wording of paragraph 2 of the TAA to support its position.  Specifically, Comcar points out that the original version of the TAA required Comcar to indemnify Martin Gas for all claims, regardless of whether they were due to Comcar's negligence.  (Doc. No. 103, Ex. 3).  However, Comcar deleted that language and added language that made Comcar responsible for indemnifying Martin Gas only for claims based on Comcar's negligence.  As such, Comcar argues that the parties never intended for

Comcar to be liable, directly or indirectly, for claims relating to Martin Gas' negligence.  The Court disagrees.

As previously stated, the Court has found that the obligations set forth in paragraphs 2 and 3 of the TAA are independent, and as such, the fact that Comcar is not required to indemnify Martin Gas for Martin Gas' own negligence does not affect the obligation of Comcar to pay the SIRs of its insurance policies, even if the claim relates to Martin Gas' negligence.  Comcar was not required to obtain insurance with a SIR, and since the TAA was clear that Comcar would be responsible for all SIRs, Comcar had the ability to avoid this outcome.[4]

**IV.  Conclusion**

Accordingly, the Court rejects Comcar's arguments that under the TAA, Comcar is not responsible for paying the SIRs of its policies if the Waggoner claim is a covered claim. Therefore, it is ORDERED AND ADJUDGED that:

(1)     Comcar and CTL's  Motion for Reconsideration (Doc. No. 137) is **DENIED**.

(2)     Comcar and CTL's Motion for Summary Judgment (Doc. No. 133) is **DENIED**.

(3)     Comcar and CTL's Request for Oral Argument (Doc. No. 144) is **DENIED**.

---

[4]There is a significant difference between finding an obligation to indemnify Martin Gas and an obligation to pay SIRs for covered claims due to Martin Gas' own negligence.  If the TAA had required Comcar to indemnify Martin Gas for such claims, Comcar's potential liability at the time of entering into the TAA would have been unlimited and uncertain in amount and occurrence.  The TAA does not impose such an obligation on Comcar.  Rather, the TAA obligates Comcar to pay for all SIRs, if any, under the insurance policies required under the TAA.  As such, at the time of entering into the TAA, while there is uncertainty as to whether a claim will be made due to Martin Gas' own negligence, there is complete certainty as to the extent of Comcar's potential liability for such claims–it is capped at the amount of the SIRs in its required insurance policies, and the existence and amount of such SIRs are completely within Comcar's control.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of October, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record