UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


BIRMINGHAM FIRE INSURANCE
COMPANY OF PENNSYLVANIA, et al.,

      Plaintiffs,


v.                                 Case No. 8:07-CV-762-T-24-MSS


COMCAR INDUSTRIES, INC., et al.,

      Defendants.

_____/

## ORDER

      This cause comes before the Court on two motions: (1) Martin Gas Corporation's ("Martin Gas") Motion for Summary Judgment (Doc. No. 136), which Comcar Industries, Inc. ("Comcar") and CTL Distribution, Inc. ("CTL") oppose (Doc. No. 143); and (2) Plaintiffs' Motion for Summary Judgment (Doc. No. 134), which Martin Gas, Comcar, and CTL oppose (Doc. No. 143, 145).

## I.  Standard of Review

      Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of showing the Court, by

reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Kevin Waggoner, an employee of Comcar/CTL, filed suit against Martin Gas for Martin Gas' alleged negligence in connection with an incident that occurred while he was working for Comcar/CTL at Martin Gas' terminal facility in August of 2003 ("the Waggoner lawsuit").[1] Specifically, Waggoner was in a truck owned by CTL when he entered Martin Gas' terminal, and he contends that he was injured due to Martin Gas' failure to adequately maintain its equipment, which resulted in him coming into contact with molten sulfur.

At that time, Martin Gas had in effect two insurance policies: a General Liability Policy issued by Ace American Insurance Company (the "ACE policy"), which provided $1,000,000 in liability coverage; and an Umbrella Policy issued by American International Specialty Lines Insurance Company (the "AISLIC policy"), which provided $25,000,000 in liability coverage in excess over all primary policies.  Comcar/CTL had a Commercial Auto Policy with Birmingham Fire Insurance Company of Pennsylvania (the "Birmingham policy") that provided $1,000,000 of coverage after payment of a $2,000,000 self-insured retention ("SIR").  Comcar/CTL also had a $4,000,000 Commercial General Liability Policy with Insurance Company of the State of Pennsylvania (the "Pennsylvania policy") that has a $1,000,000 SIR.

---

[1]CTL is a subsidiary of Comcar.

Martin Gas contends that it and Comcar/CTL entered into a Terminal Access Agreement ("TAA"), granting Comcar/CTL access into Martin Gas' terminal in Tampa.  The TAA that Martin Gas refers to (attached to the second amended complaint) provides that Comcar/CTL will indemnify Martin Gas for any liability arising from Comcar's/CTL's negligent acts.  (Doc. No. 64, Ex. E).  Additionally, the TAA requires Comcar/CTL to name Martin Gas as an additional insured on its insurance policies.  (Doc. No. 64, Ex. E).

The Waggoner lawsuit has been settled for the total sum of $2,725,000.  Martin Gas' position in that lawsuit was that it was an additional insured under both of Comcar's insurance policies pursuant to the TAA.  Comcar and CTL believe that they are not liable for Waggoner's claim, and as such, they refused to settle Waggoner's claim.  Martin Gas agreed to advance the sum of $1,000,000 (the limit of the ACE policy), and AISLIC agreed to advance the sum of $1,725,000 to settle the Waggoner action.  AISLIC advanced this sum under protest and reservation of rights to seek reimbursement from Comcar and CTL.

Plaintiffs Birmingham Fire Insurance Company of Pennsylvania ("Birmingham"), Insurance Company of the State of Pennsylvania ("Pennsylvania"), and AISLIC filed a second amended complaint (Doc. No. 64) against Comcar, CTL, and Martin Gas, in which Plaintiffs seek declarations regarding the various insurance policies and AISLIC seeks damages against Comcar.  In response, Martin Gas filed a cross-claim against Comcar and CTL seeking declarations regarding the various insurance policies and damages.  (Doc. No. 67).

## III.  Motions for Summary Judgment

The two motions for summary judgment before the Court have overlapping issues.  As such, the Court will address both motions together.

**A.  Validity of the TAA**[2]

Plaintiffs and Martin Gas argue that the TAA attached to the complaint[3] is a valid contract between Comcar/CTL and Martin Gas.  In support of this contention, Plaintiffs and Martin Gas make four overlapping arguments: (1) Martin Gas' failure to sign the TAA does not prevent Comcar/CTL from being bound by the TAA; (2) Martin Gas accepted Comcar/CTL's proposed changes and both parties performed as if the TAA was valid; (3) Comcar/CTL is estopped from denying the validity of the TAA, because it accepted the benefits of the TAA; and (4) Martin Gas gave consideration for the TAA in the form of access to the terminal for Comcar/CTL.

Comcar and CTL argue that the TAA is not a valid contract, because they rejected the original version of the TAA by making changes to the draft, which made the revised version that was sent back to Martin Gas a counteroffer, which Martin Gas did not accept.  As explained below, the Court finds that genuine issues of material fact exist that preclude summary judgment on this issue.

Plaintiffs and Martin Gas argue that despite Martin Gas' failure to sign the TAA, it is a valid agreement to which Comcar and CTL are bound, because Comcar/CTL did sign it. Comcar and CTL respond that Martin Gas never communicated its acceptance of the revised

---

[2]Plaintiffs and Martin Gas argue that either Florida law or Texas law applies to determine whether the TAA is valid, and that it does not matter which state's law is applied, because the law is the same.  Comcar and CTL argue that Florida law should be applied.  Since both parties agree that Florida law may be applied, the Court will apply Florida law to determine whether the TAA is a valid contract.

[3]When referring to the complaint throughout this Order, the Court is referring to the operative complaint, which is the second amended complaint.

TAA.  Furthermore, Comcar and CTL argue that Martin Gas' attorney, Ron White, and Martin Gas' Risk Manager, Mike Murley, informed Comcar and CTL's attorney, Jay Taylor, that Martin Gas had rejected the changes made by Comcar/CTL to the draft version of the TAA, and as such, no contract existed.  Clearly, a factual issue exists.

There is no dispute that the original version of the TAA that Martin Gas sent to Comcar/CTL was not agreed to by Comcar and CTL.  The original version of the TAA provided that Comcar/CTL would indemnify Martin Gas for any claims made against Martin Gas regardless of whether the claim was due to Martin Gas' own negligence.  Comcar and CTL crossed out the portion that required Comcar/CTL to indemnify Martin Gas for all claims and then inserted language stating that Comcar/CTL would only indemnify Martin Gas for claims arising from the negligent acts of Comcar/CTL.  (Doc. No. 125).  Comcar and CTL initialed and dated the change March 27, 2000 and then sent the revised version of the TAA to Martin Gas. (Doc. No. 125).

Martin Gas contends that its Vice President, Donald Neumeyer (the only person who could accept or reject changes to the TAA), received the revised version of the TAA, accepted it, and filed it away in his files.  (Doc. No. 128: Neumeyer depo, p. 37, 67).  However, Neumeyer concedes that Martin Gas never signed the TAA, and he never verbally communicated to Comcar and CTL his acceptance of the changes they made to the TAA.  (Doc. No. 128: Neumeyer depo, p. 37).  Furthermore, Comcar and CTL point to evidence that during a phone call that occurred in early April of 2000, White and Murley told Comcar and CTL's attorney, Taylor, that Martin Gas had rejected the proposed changes to the TAA.  (Doc. No. 124: Taylor depo, p. 49-54, 58).

Despite the conflicting evidence regarding Martin Gas' acceptance of the proposed changes, Plaintiffs and Martin Gas argue that Comcar and CTL are bound by the revised TAA, because Comcar/CTL signed it.  However, the revised TAA that was sent to Martin Gas was a rejection of the original TAA and a counteroffer by Comcar/CTL with a new term–that Comcar/CTL would only indemnify Martin Gas for claims made against Martin Gas due to Comcar/CTL's negligence.

To support their argument that Comcar/CTL is bound by the revised TAA, Plaintiffs and Martin Gas cite to case law that states:

> A contract not signed by all of the parties, but otherwise valid, may be upheld against the signing party, unless the nature or the wording of the contract indicates that his signature was conditioned upon all other parties signing the contract, or he can prove by parol evidence that when he signed the contract he made it known to the other parties who now seek to sustain the contract that he only intended to be bound if all parties signed it.

Skinner v. Haugseth, 426 So. 2d 1127, 1131 (Fla. 2d DCA 1983).  Plaintiffs' and Martin Gas' reliance on this case law is misplaced, because the quoted case law merely means that the lack of a signature is not dispositive.  Thus, the case law supports the proposition that unless a signature is required by the parties, as long as the elements of a contract exist–offer, acceptance, and consideration–the failure of a party to sign the contract is not dispositive of the validity of the contract.

Comcar and CTL argue that Plaintiffs and Martin Gas cannot show that the revised TAA was "otherwise valid."  Specifically, Comcar and CTL argue that there was no acceptance or consideration.  The Court finds that a question of fact exists as to each of these elements.

As explained above, there is a question of fact regarding whether the revised TAA was accepted by Martin Gas.  Comcar and CTL point to Neumeyer's deposition testimony in which

he says that he did not communicate his acceptance of the revised TAA to anyone, and they also

point to Taylor's testimony that he was told that Martin Gas had rejected the revised TAA.  In

order for their to be a valid contract, acceptance of the revised TAA must be communicated to

Comcar and CTL.  See Kendel v. Pontious, 261 So. 2d 167, 170 (Fla. 1972).

Further, while Plaintiffs and Martin Gas argue that Martin Gas' Gas acceptance was

shown by its continuing to allow Comcar/CTL access to the terminal (because if Neumeyer had

rejected the changes, he would have denied Comcar/CTL access), Comcar and CTL point to

evidence showing a factual dispute on this issue.  To begin with, while the fact that Comcar/CTL

was given access to the terminal after Comcar and CTL sent Martin Gas the revised TAA could

support the contention that such conduct showed Martin Gas' acceptance of the revised TAA,

Comcar and CTL point out that they have had uninterrupted access to the terminal since 1997.

(Doc. No. 121: B. Austin depo, p. 8, 68-70).  Comcar and CTL had continued access despite the

fact that there is evidence that they did not name Martin Gas as an additional insured on their

October 1999 through November 2000 insurance policies when a certificate was issued to Martin

Gas on March 27, 2000 describing the insurance that Comcar/CTL had in place (even though the

revised TAA required Comcar/CTL to name Martin Gas as an additional insured).  Thus,

Comcar and CTL argue that the most reasonable inference to be drawn from these facts is that

Martin Gas and Comcar/CTL simply continued their preexisting business relationship.  Since

this Court must construe the facts in the light most favorable to Comcar and CTL, the Court

finds that Comcar and CTL's interpretation of the facts on this point is reasonable and creates a

genuine issue of material fact regarding whether Martin Gas communicated its acceptance of the

revised TAA.

Furthermore, since Comcar and CTL argue that Martin Gas and Comcar/CTL simply continued their preexisting business relationship of giving Comcar/CTL access, Comcar and CTL argue that the revised TAA lacks consideration.  Likewise, Comcar and CTL argue that their continued access of the terminal is not proof that they were accepting the benefits of the TAA while renouncing the obligations imposed on them, because the parties were simply continuing their preexisting relationship.

Given that there is a question of fact as to whether Martin Gas accepted the revised TAA, the Court cannot make a determination as to whether there was any consideration given.  Martin Gas may have rejected the revised TAA but still gave Comcar/CTL access to the terminal by simply continuing the status quo.

Accordingly, the Court finds that there are genuine issues of material fact regarding the validity of the revised TAA.  As such, the Court denies Plaintiffs' and Martin Gas' motion for summary judgment on this issue.

### B.  Martin Gas' Status under Comcar and CTL's Insurance Policies

Both Plaintiffs and Martin Gas argue that they are entitled to summary judgment on the issue of whether Martin Gas is an additional insured under Comcar and CTL's policies, and if so, that Comcar and CTL are responsible for paying any SIR.  Comcar and CTL fail to address this argument in their opposition.  As such, the Court concludes that if it is determined at trial that the revised TAA is a valid contract, then pursuant to paragraph 3 of the revised TAA[4] and the

---

[4]Paragraph 3 states, in pertinent part, that "[a]ll insurance coverages required above and all certificates evidencing such coverages shall be endorsed to specifically reflect that [Martin Gas is an] . . . "additional assured[]", . . . [and] all deductibles and/or self insured retentions shall be for the account of [Comcar/CTL]."

language of the Birmingham and Pennsylvania policies, Martin Gas is an additional insured under those policies, and Comcar and CTL would be responsible for paying the SIR if the Waggoner claim is covered under the language of the policies.

### C.  Reasonableness of the Settlement

Both Plaintiffs and Martin Gas argue that this Court should find that the settlement of the Waggoner claim for $2,725,000 was reasonable as a matter of law.  Comcar and CTL state in their response that they will not challenge the reasonableness of the settlement.  (Doc. No. 143, p.7, n.2).  Accordingly, the Court grants Plaintiffs and Martin Gas summary judgment on this issue.

### D.  Priority of Coverage

Assuming that the revised TAA is a valid contract, and thus Martin Gas is an additional insured under the Birmingham and Pennsylvania policies, the parties dispute the priority of coverage between the Birmingham and Pennsylvania policies.[5]  The resolution of this issue depends on the language of the policies.

The Birmingham policy provides that when there is other insurance, the Birmingham policy is excess over any other collectible insurance when the loss involves "any covered 'auto' you don't own."  (Doc. No. 64-7).  The truck that Waggoner was in was owned by CTL, not Martin Gas.  The Birmingham policy further provides, in pertinent part, that "the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."  (Doc. No. 64-4).  Since coverage applies separately to each insured, and since

---

[5]The parties agree that if the Waggoner claim is a covered claim under the Birmingham and Pennsylvania policies, then the AISLIC policy will not be implicated, because the limits of the Birmingham and Pennsylvania policies exceed the amount of the Waggoner claim.

Martin Gas did not own the truck involved the in the incident, the insurance provided to Martin

Gas by the Birmingham policy is excess.

Under Section I, subsection 2(g) of the Pennsylvania policy, it excludes coverage for

bodily injury arising out of the ownership or use of any auto that is owned by, operated by,

rented by, or loaned to any insured.  (Doc. No. 64-15).  The Pennsylvania policy also has a

separation of insureds provision, which states that the insurance applies "[s]eparately to each

insured against whom claim is made or 'suit' is brought."  (Doc. No. 64-16).  In a prior Order,

this Court has found that under the case law, the separation of insureds provision applies and

coverage is not excluded, because CTL, not Martin Gas, owned the truck.  (Doc. No. 118, p. 7-

8).

The "Other Insurance" section of the Pennsylvania policy provides that the Pennsylvania

policy is excess over other insurance, if the loss arises out of the use of an auto, as long as the

loss is not excluded under Section I, subsection 2(g).  Since this Court has found that coverage is

not excluded under Section I, subsection 2(g), the Pennsylvania policy also provides excess

coverage.

Since both the Birmingham and Pennsylvania policies provide excess coverage, the Court

must look further at the language of the policies.  The Birmingham policy provides that when it

and another insurance policy provide excess coverage, Birmingham will pay "the proportion that

the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage

Forms and policies covering on the same basis."  (Doc. No. 64-7).  Likewise, under the facts of

this case, the Pennsylvania policy provides that under its method of sharing, "each insurer's

share is based on the ratio of its applicable limit of insurance to the total applicable limits of

insurance of all insurers." (Doc. No. 64-16).

Accordingly, both the Birmingham and Pennsylvania policies are excess policies. Furthermore, under their method of sharing provisions, if the Waggoner claim is covered by the Pennsylvania and Birmingham policies, the payment of the Waggoner claim would occur as set forth by Martin Gas, Comcar, and CTL: (1) Comcar/CTL pays the $1,000,000 SIR of the Pennsylvania policy; (2) Pennsylvania pays the next $1,000,000 (because its policy is triggered by Comcar/CTL's payment of the $1,000,000 SIR); and (3) Pennsylvania and Birmingham share, on a pro rata basis, the payment of the remaining $725,000. Therefore, Plaintiffs' motion for summary judgment on this issue is denied, and Martin Gas' motion is granted.

### E.  Whether the Revised TAA is an Insured Contract under the AISLIC policy

Plaintiffs argue that the revised TAA is not an insured contract as defined by the AISLIC policy, and as such, Comcar and CTL are not additional insureds under the AISLIC policy. Therefore, Plaintiffs request that the Court grant them summary judgment on Comcar and CTL's counterclaims and fourteenth affirmative defense, in which Comcar and CTL assert that because the revised TAA is an insured contract (making them an additional insured under the AISLIC policy), AISLIC cannot pursue a claim against them due to the anti-subrogation rule. (Doc. No. 69, 78). Additionally, Plaintiffs seek summary judgment to the extent that Comcar and CTL argue that if Comcar/CTL have to pay any SIR, then due to a mutual indemnity agreement between Comcar/CTL and Martin Gas, Martin Gas would have indemnify Comcar/CTL for the amount paid, and such a claim against Martin Gas would be covered under the AISLIC policy. As explained below, Plaintiffs are entitled to summary judgment in these issues.

The AISLIC policy defines an insured as including:

> Any . . . organization . . . to whom [Martin Gas] is obligated by a written Insured
> Contract to provide insurance such as is afforded by this policy but only with
> respect to:
> a.      liabilities arising out of operations conducted by [Martin Gas] or on
>         [Martin Gas'] behalf; or
> b.      facilities owned or used by [Martin Gas].

(Doc. No. 64-19, p. 8, 9).  Additionally, the AISLIC policy defines an Insured Contract as

follows:

> Insured Contract means any oral or written contract or agreement entered into by
> [Martin Gas] and pertaining to [Martin Gas'] business under which [Martin Gas]
> assume[s] the tort liability of another party to pay for Bodily Injury . . . [or]
> Personal Injury . . . to a third person . . . .  Tort liability means a liability that
> would be imposed by law in the absence of any contract or agreement.

(Doc. No. 64-19, p. 9).

Plaintiffs argue that the revised TAA is not an insured contract, as defined by the AISLIC

policy.  Comcar and CTL respond that the revised TAA (if valid) contains mutual indemnity

obligations, and as such, it is an insured contract under the AISLIC policy.  The Court rejects

Comcar and CTL's argument.

Comcar and CTL contend that the revised TAA (if valid) contains mutual indemnity

provisions due to the fact that Comcar and CTL's attorney, Jay Taylor, sent a letter to Martin

Gas on April 6, 2000, in which he states the following:

> Pursuant to recent conversations with Martin Gas, we have reviewed the subject
> Terminal Access Agreement requested by Martin Gas.  CTL would like the
> language to accurately represents [sic] the intent of the parties.  To that end, CTL
> will agree to a mutual indemnification.  An additional paragraph should be
> inserted that restates Paragraph 2 changing the party names to reflect Martin Gas
> mutually indemnifying CTL.

(Doc. No. 124-5).  Comcar and CTL concede that Martin Gas never communicated its

acceptance of their counteroffer of mutual indemnity.  (Doc. No. 143, p. 28).  However, they

appear to be arguing that a factual issue exists that precludes summary judgment for two reasons: (1) Since Neumeyer (the only person at Martin Gas who could accept or reject the revised TAA) interprets it as featuring mutual indemnity, then the revised TAA attached to the complaint must do so; and/or (2) the mutual indemnity counteroffer was accepted by Martin Gas' silence.   The Court rejects these arguments.

The fact that Neumeyer reads the revised TAA attached to the complaint as containing mutual indemnity is of no consequence, because the actual language used in the TAA does not state that Martin Gas will indemnify Comcar/CTL for claims made against them due to Martin Gas' own negligence.  Comcar and CTL's argument that the language of the revised TAA does contain such mutual indemnity is undermined by the fact that the April 6, 2000 letter from their attorney to Martin Gas states that the TAA did not feature mutual indemnity, and as such, Comcar and CTL were requesting that *additional language be added* to provide for mutual indemnity.  What the TAA says is a question of law for the Court to decide, and clearly, the revised TAA attached to the amended complaint does not feature mutual indemnity.

Additionally, Comcar and CTL's argument that Martin Gas accepted the mutual indemnity counteroffer by its silence is not supported by the record.  Comcar and CTL fail to point to any record evidence in which anyone at Martin Gas gives testimony addressing the April 6, 2000 letter requesting mutual indemnity or even acknowledges receipt of it.  In fact, in his deposition, Jay Taylor states that Martin Gas did not accept the mutual indemnification counteroffer.  (Doc. No. 124: Taylor depo, p. 59-62).

Accordingly, the Court finds that there is not a question of fact regarding whether Martin Gas accepted Comcar and CTL's counteroffer of mutual indemnification.  Rather, the Court

finds that there was not a mutual indemnification agreement between Martin Gas and

Comcar/CTL.  As such, the revised TAA attached to the complaint is not an insured contract,

because Martin Gas does not assume the tort liability of Comcar or CTL in the revised TAA.

Since the Court has found that the revised TAA is not an insured contract, Comcar and

CTL's argument that they are insureds under the AISLIC policy because of the revised TAA

fails.  Further, since Comcar and CTL's argument that they are additional insureds under the

AISLIC policy fails, their argument that AISLIC cannot pursue a claim against them due to the

anti-subrogation rule also fails.  Finally, because the Court has found that there was not a mutual

indemnity agreement between Martin Gas and Comcar/CTL, Comcar/CTL cannot assert a claim

for contractual indemnity against Martin Gas regarding the payment of any SIR and then look to

AISLIC for payment.  For these reasons, the Court grants AISLIC summary judgment on

Comcar and CTL's counterclaims for declaratory judgment and fourteenth affirmative defense.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Martin Gas' Motion for Summary Judgment (Doc. No. 136) is **GRANTED** as to

Martin Gas' status as an additional insured if the revised TAA is found to be valid

and as to the reasonableness of the Waggoner settlement; the motion is **DENIED**

as to the validity of the revised TAA.

(2)     Plaintiffs' Motion for Summary Judgment (Doc. No. 134) is **GRANTED** as to

Martin Gas' status as an additional insured if the revised TAA is found to be

valid, as to the reasonableness of the Waggoner settlement, and as to the fact that

Comcar and CTL are not additional insureds under the AISLIC policy; the motion

14

is **DENIED** as to the validity of the revised TAA and as to the priority of

coverage between the Birmingham and Pennsylvania policies.

(3)      The parties' requests for oral argument (Doc. No. 135, 144) are **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of October, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

15